IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ADAM BRENT WALLACE                                                                    PLAINTIFF

VS.                                                            CIVIL ACTION NO.  3:19-cv-726-FKB

DERRIN JEROME
ROBERTSON, ET AL.                                                                    DEFENDANTS


**MEMORANDUM OPINION AND ORDER**

Before the Court are motions for summary judgment filed by Plaintiff Adam Brent Wallace, Defendant Centurion of Mississippi, LLC ("Centurion"), and Defendant Derrin Jerome Robertson.  *See* [82], [88], [90].[1]  The motions are fully briefed by the parties.  Wallace is proceeding in this matter *in forma pauperis* and *pro se*.  For the reasons discussed below, the Court hereby grants Centurion's motion for summary judgment [88] and denies Robertson's motion for summary judgment.  *See* [90].  Plaintiff's motion for summary judgment [82] is also denied.

I.   CLAIMS

Wallace is a state inmate in the custody of the Mississippi Department of Corrections ("MDOC") and is currently housed at South Mississippi Correctional Institution ("SMCI").  The events forming the basis of this complaint allegedly transpired at Central Mississippi Correctional Facility ("CMCF") in March 2019.  At that time, Defendant Centurion provided

---

[1] Plaintiff filed a motion to dismiss his claims against Defendant Sean Smith, and the Court granted the motion.  *See* [81], [86].  Plaintiff alleged that Smith failed to investigate properly the incident forming the basis of this action.  The Court previously denied without prejudice Centurion's motion for summary judgment [46] and, thereby, Robertson's related joinder [48], premised upon Plaintiff's failure to exhaust administrative remedies.  *See* [67].

medical services to inmates incarcerated at CMCF, and Defendant Robertson was employed as a transportation officer at CMCF. [32] at 1, [91] at 1.

Plaintiff alleges that Defendant Robertson violated his constitutional rights on March 6, 2019 when, following a pat down search, Robertson allegedly "grabbed and squeezed [Wallace's] genitals in a sexual manner that caused [him] to be aroused, humiliated, embarrasse[d]" and suffer "additional pain because of the lump on [his] testicle." [1-1] at 2-3; *see also* [65] at 10-11. Robertson allegedly conducted the pat down search in advance of transporting Plaintiff to an appointment with a urologist at an off-site medical clinic. [1-1] at 2-3. During the outing, Robertson allegedly threatened to harm Plaintiff if he told other accompanying officers about the incident and attempted, but failed, to grab Wallace's genitals again during an elevator ride at the medical clinic. [1-1] at 3. Plaintiff alleges that he feared for his life throughout the trip. *Id.*

Plaintiff's claims against Defendant Centurion stem from Wallace's medical treatment after he returned from his appointment with the urologist. Wallace alleged in his original complaint that "no medical treatment or physical examination was offered [to him] for the pain." [1] at 6. He alleges that he submitted medical service request forms about the March 6 incident on May 6 and May 26, 2019, but received no response. [1-1] at 6; [65] at 9-10.

The Court granted Plaintiff's motion to amend [45] as to "Dr. Ronald King," but King was never served.[2] *See* Text Only Order 3/9/21. Plaintiff alleges that he informed Defendant King of the March 6 incident during a medical examination on May 20, 2019, but that King "failed to take action." [45] at 2. In a Request for Administrative Remedy submitted on June 6,

---

[2] Even so, the Court will address Plaintiff's claims against Defendant King, who, according to medical records, was a physician's assistant at CMCF by the name of "Robert C. King." [99] at 22.

2

2019, Wallace asserts that King failed to offer a forensic medical exam to him after King examined him at the May 20 visit. [45-1] at 16. And at the omnibus hearing, he testified that he had sued Centurion because it employed King. [65] at 17-18.

In his claim for relief, Wallace asks for compensatory damages, a complete physical exam, immediate release, costs, and interest. [45-1] at 13.

## II.   RELEVANT STANDARDS

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.), *cert. denied*, 119 S.Ct. 618 (1998)). Issues of fact are material if "resolution of the issues might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(emphasis omitted). Moreover, the nonmoving party's burden to come forward with "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little*, 37 F.3d at 1075.

## III.   DISCUSSION

### A.  Defendants Centurion and King

Having considered the filings, the Court concludes that Defendant Centurion is entitled to summary judgment. Based on Wallace's filings and his testimony at the omnibus hearing, he is attempting to impose liability on Centurion based solely on the actions or inactions of its employees. This attempt cannot succeed, as there is no *respondeat superior* liability under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also White v. Wexford Health Sources, Inc.*, 2013 WL 962365 (S.D. Miss. Feb. 11, 2013)(citing *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 505-506 (4th Cir. 1982)(finding that the plaintiff could not recover against a private state-employed company under § 1983 based on *respondeat superior*)). Rather, a plaintiff seeking to recover under § 1983 must allege and prove that the defendant directly participated in the denial of his constitutional rights. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). In this case, Plaintiff has failed to allege direct participation or wrongdoing attributable to Centurion in the denial of his constitutional rights.

Without a showing of independent liability, Wallace can only recover against Centurion by demonstrating "(1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Green v. Management & Training Corp.*, Civil Action No. 3:17-cv-149-MPM-JMV, 2019 WL 3557348, at *2 (N.D. Miss. Aug. 5, 2019)(citing *Rivera v. R.H. Indep. Sch. Dist.*, 349 F.3d 244, 247-249 (5th Cir. 2003)). While Wallace has identified MDOC's official policy for dealing with sexual assaults and the Rape Elimination Act of 2003, *see* [82-3] and [82-5], he has failed to show that some Centurion policy or practice caused his alleged constitutional violation. Moreover, liability under § 1983 for an alleged failure by Centurion to follow MDOC policy cannot be imposed on Centurion because "violations of prison rules do not

4

alone rise to the level of constitutional violations and, therefore, such claims are not actionable under [§] 1983." *Scheidel v. Secretary of Pub. Safety & Corr.*, 561 F. App'x 426, 427 (5th Cir. 2014)(citing *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986)). Accordingly, the Court hereby grants summary judgment in favor of Centurion and denies Plaintiff's motion for summary judgment as to Centurion.

Plaintiff's claims against Defendant King, furthermore, fail to rise to the level of a constitutional violation. Wallace argues that when King examined him on May 20, 2019, over two months after the incident, "King failed to take action." [45] at 2.

"In the context of medical care, a prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F. 3d 752, 754 (5th Cir. 2001). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F. 3d 339, 346 (5th Cir. 2006). "A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quotations omitted). A plaintiff is not entitled to the "best" medical treatment. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978). Further, "[a] prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs." *Id.* (citations omitted). A defendant may rebut a prisoner's allegations of deliberate indifference by presenting "[m]edical records of sick calls, examinations, diagnoses, and medications." *Gobert*, 463 F.3d at 346 n. 24 (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)).

Centurion medical personnel, other than King, examined Wallace multiple times between March 6 and May 20. A nurse practitioner examined him on March 6 and 7 after he returned from his March 6 urologist appointment. [99] at 2-3. Although Wallace discussed his urologist's visit, asked for a second opinion, and made a request to see an eye doctor for cataracts during those visits, the medical records do not indicate that he complained of being assaulted by Defendant Robertson. *Id.* In fact, the examining nurse practitioner noted that he was "[p]leasant" and had "[n]o complaints." *Id.* at 1. On March 7, a nurse practitioner made a specialty care consultation request for his cataracts. *Id.* at 4. On March 18 and 19, he was seen by multiple health care providers, including an off-site optometrist, who prescribed glasses and diagnosed cataracts. *Id.* at 5-10. On April 10, he made a sick call request for hemorrhoids. *Id.* at 11. Medical personnel saw him and prescribed medications for that condition and his additional complaints of chronic prostatitis on April 10 and 11. *Id.* at 12-16. On April 24, a nurse practitioner saw him as a follow-up for his complaints of hemorrhoids, prostatitis, and urination issues. *Id.* at 17-18. After examination, the nurse practitioner noted that Wallace was not a candidate for a hemorrhoidectomy, ordered urine samples, and advised him to drink plenty of water. *Id.* at 18. Although officers failed to transport Wallace to appointments with nurses on May 7 and May 15, he was seen by a nurse for complaints of difficulty urinating on May 19, 2019. *Id.* at 19-21.

Defendant King examined Wallace the next day, May 20, for his urination issues. *Id.* at 22. King noted that Wallace complained that he had been searched on March 6 and "allege[d] the officer squeezed his genetils [sic] on a pat down search and had a[n] AARP with this incident." *Id.* This entry by King is the first notation in the medical records of Wallace having

6

made any complaints about the alleged March 6 incident.  In response to Wallace's complaints of pain with urination, King assessed "interstitial cystitis, painful bladder, hesitancy, unlikely prostatitis due to location of pain, more likely due to bladder issue." *Id.*  King prescribed the following medications: tamsulosin, used for treatment of enlarged prostrate; baclofen, which treats muscle spasms; and nortriptyline, used for nerve pain and depression.  *Id.*  The records indicate that the medications were administered.  *Id.* at 25-26; *see also* https://medlineplus.gov/druginfo/meds (last visited Nov. 14, 2022).

The medical records show that Wallace did not complain until May 20 about the alleged March 6 incident.  And when Wallace informed Defendant King on May 20 of his condition and the alleged March 6 incident, King did not fail "to take action" in response to Wallace's complaints.  To the contrary, King prescribed medications for Wallace's chronic interstitial cystitis and urination pain.  As the records demonstrate, Plaintiff merely disagreed with the medical treatment he received from King.  King did not refuse to treat Wallace, did not ignore his complaints, did not intentionally treat him incorrectly, and did not engage in conduct that would "clearly evince a wanton disregard for any serious medical needs." *McMahon*, 583 F.2d at 174.

As for Wallace's vague claim that King should have pursued some unspecified action about the alleged groping incident, King's treatment notes clarify that Wallace informed him that Wallace was pursuing an administrative remedy about the incident.  Moreover, liability under § 1983 for an alleged failure by King to follow MDOC policy cannot be imposed on King because "violations of prison rules do not alone rise to the level of constitutional violations . . . ." *Scheidel*, 561 F. App'x at 427.  Accordingly, Wallace's claims against King fail to rise to the

level of a constitutional violation and, therefore, his claims against King should be dismissed for failure to state a § 1983 claim.

### B. Defendant Robertson

Plaintiff's claims against Defendant Robertson are another matter. Plaintiff alleges in his complaint and testified at an omnibus hearing that Robertson grabbed and squeezed his genitals, causing him pain, following a pat down search. [65] at 10-13. Wallace alleges that Robertson threatened him with harm if he told anyone about the incident, [1-1] at 3, and he further testified that Robertson attempted to grab his genitals again during an elevator ride at the off-site medical clinic. [65] at 13; *see also id.*

The Eighth Amendment protects a prisoner's right to be free from sexual assaults by prison officials. *Copeland v. Nunan*, 250 F.3d 743, 2001 WL 274738, at 3 (5th Cir. Feb. 21, 2001)(Table)(citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)). A "single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *See Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015).

To state an Eighth Amendment claim under § 1983, an inmate's claim must be comprised of two elements, one subjective and one objective. "First, the prisoner must show that the conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions." *Lagarde v. Metz*, Civil Action No. 13-805-RLB, 2017 WL 457654, at *3 (M.D. La. Feb. 2, 2017)(quoting *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)). "Second, the subjective prong requires the prisoner to show that the defendant acted with a 'sufficiently culpable state of mind.'" *Id.* (quoting *Hudson*, 503 U.S. at 8).

8

"In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Crawford*, 796 F.3d at 257-258 (citing *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986)).  Beyond that, the analysis turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-321 (internal quotation marks omitted).  "Although not 'every malevolent touch by a prison guard gives rise to a federal cause of action,' the Eighth Amendment is offended by conduct that is 'repugnant to the conscience of mankind.'" *Crawford*, 796 F.3d at 256 (quoting *Hudson*, 503 U.S. at 10)(internal quotation marks omitted); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010)(reiterating that the Eighth Amendment's protection "excludes" *de minimis* injuries only if the cruel and unusual punishment "is not of a sort repugnant to the conscience of mankind.").  The *Hudson* court concluded that actions are "repugnant" to the conscience of mankind if they are "incompatible with evolving standards of decency" or involve "the unnecessary and wanton infliction of pain." *Hudson*, 503 U.S. at 10.

In the past, the Fifth Circuit has determined that although isolated and unwanted sexual touchings by prison employees are "despicable," these incidents "'do not involve a harm of federal constitutional proportions as defined by the Supreme Court.'" *Pryer v. Walker*, 385 F. App'x 417, 418 (5th Cir. 2010)(citing *Boddie v. Schneider*, 105 F.3d 857, 860-861 (2d Cir. 1997)).  Although the Fifth Circuit has not had an opportunity to address this issue directly in recent years, many courts in the Fifth Circuit have continued to hold "that single and isolated acts of sexual touching [are] not sufficient to state a claim under the Eighth Amendment." *Folse*

*v. Knight*, Civil Action No. 17-9624, 2018 WL 3370671, at *4 (E.D. La. June 11, 2018)(citing *Copeland* and district court cases dating from 2006 to 2018).

However, noting a "changing current" in the Fifth Circuit, the district court in *Folse* concluded that "'conduct that might not have been seen to rise to the severity of an Eighth Amendment violation 18 years ago may now violate community standards of decency. . . .'" *Id.* at *5 (quoting *Crawford*, 796 F.3d at 260). Courts have observed that evaluation of these claims is a "fact specific inquiry" and are "aware, however, that in more recent years, federal courts have recognized that the evolving standards of decency demonstrate a national consensus that any sexual assault of a prisoner by a prison employee constitutes cruel and unusual punishment." *Lagarde*, 2017 WL 457654, at *4 (internal quotations and citations omitted). In fact, as of 2017, 48 states had criminalized sexual contact between inmates and correctional officers, as opposed to only 18 states in 1997. *Id.* (citing *Crawford*, 796 F.3d at 259 & nn.5-7.). In Mississippi, sexual acts between offenders and a broad range of law enforcement and correctional employees have been criminalized since 1998. *See* Miss. Code Ann. § 97-3-104 (1998). "'These laws and policies . . . make clear that the sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment.'" *Lagarde*, 2017 WL 457654, at *4 (citing *Crawford*, 796 F.3d 260).

In this case, the Court is faced with two diametrically opposed versions of the same incident, as established by Plaintiff's sworn testimony and Defendant Robertson's affidavit. Plaintiff testified that Robertson "grabbed and squeezed" his genitals following a pat down search, attempted to grab him again while in an elevator later in the day, and threatened Wallace with harm if he reported the alleged conduct to other officers and inmates accompanying them to

an off-site doctor's visit. [65] at 10-15.  Defendant Robertson avers that he did not grab Plaintiff's genitals during a pat and frisk search.  [92-3] at 1.  Further, he avers that in his ten years of employment with MDOC, he "cannot recall ever once performing a pat down search on any inmate," including Plaintiff.  *Id.*  He states, "[i]nstead, I always strip search the offender to make sure that they are no[t] in possession of any contraband."  *Id.*

At this juncture, the Court must accept "all well-pleaded facts as true" and view "them in the light most favorable to the plaintiff."  *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008).  Considering the differing versions of the subject incident, the Court concludes that genuine issues of material fact preclude the grant of summary judgment.  Moreover, a prisoner's constitutional right to be free from sexual assaults by prison officials was clearly established in March 2019, when the event allegedly occurred.[3]  *See Copeland*, 250 F.3d at 743; *see also* Miss. Code Ann. § 97-3-104 (1998)(criminalizing sexual acts between prisoners and, *inter alia*, employees of correctional facilities).  Accordingly, Defendant Robertson's motion for summary judgment is denied, and, likewise, Wallace's motion for summary judgment is denied.

IV.     CONCLUSION

For the reasons explained in this Memorandum Opinion and Order, Centurion's motion for summary judgment [88] is granted, and Plaintiff's claims against Defendant King are hereby dismissed for a failure to rise to the level of a constitutional violation.  Defendant Robertson's

---

[3] "Courts must evaluate claims of qualified immunity in a two step process:  first, a court must determine whether the 'facts alleged show the officer's conduct violated a constitutional right'; if the court finds a violation, then it proceeds to the second step, which is to determine whether 'the right was clearly established . . . in light of the specific context of the case.'"  *Brown*, 519 F.3d at 236 (quoting *Scott v. Harris*, 550 U.S. 372 (2007)).  The *Brown* court went on to state that "[t]o be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.*

motion for summary judgment [90] and Plaintiff Wallace's motion for summary judgment [82] are denied. The Court will separately enter an appropriate scheduling order.

SO ORDERED, this the 28th day of November, 2022.

/s/ F. Keith Ball                              .
UNITED STATES MAGISTRATE JUDGE